### BAKER v. BAKER.

Equity—Parent and Child—Deeds—Cancellation.

A transfer by a mother to her son of incumbered property of no considerable value above the incumbrances, with the understanding on the part of the transferee that he should support her during her lifetime, will not be set aside on her unsupported and contradicted testimony that he agreed to execute a contract to reconvey the property on demand, although a decree should be affirmed which provided for reasonable support.

Appeal from Cheboygan; Emerick, J., presiding. Submitted April 14, 1909. (Docket No. 44.) Decided May 26, 1909.

Bill by Emeline Baker against Harry Baker to set aside certain deeds. From the decree rendered, complainant appeals. Affirmed.

*Benjamin & Quay* (*Stevenson, Carpenter & Butzel* and *James F. Shepherd*, of counsel), for complainant.

*Frost & Sprague*, for defendant.

Brooke, J. The complainant in this case files her bill

of complaint against the defendant, Harry Baker, who is her only son and heir.  By her bill she seeks to have set aside and held for naught three deeds; the first bearing date July 1, 1901, the second bearing date July 25, 1901, and the third bearing date the 11th day of April, 1902. The three deeds, taken together, conveyed from the complainant to the defendant many parcels of land in and near the city of Cheboygan, and constituted the entire estate of the complainant, which she had inherited from her husband, the father of the defendant, some years prior thereto.  The complainant averred in her bill, and testified, that at the time of the execution of the three deeds, the cancellation of which she sought, her estate had become very much involved.  She had been unable to pay the taxes on the property, and many parcels of it had been sold for taxes, and title in the holders of the same would soon thereafter become absolute.  In addition to the tax titles, the property was incumbered by mortgage to such an extent that she was unable to raise any more money upon it.  Her homestead and 40 lots she had lost by mortgage foreclosure about this time.  In this predicament she appealed to her own son to aid her.  The amount of money she estimated to be necessary for the redemption of the tax receipts and the care of pressing mortgage indebtedness was $1,500.  This sum the defendant was wholly unable to furnish her.  He himself was at the time, and had been for many years, working for a salary as bookkeeper in a local concern.  Thereupon it is her claim that the defendant proposed to her that, if she would deed to him all her property, he would undertake to clear it from the tax titles and prevent its loss under mortgage foreclosure.

It is further her contention that he agreed, in consideration of her making the deeds as suggested, that he would give to her a declaration to the effect that he held the property in trust for his mother and would reconvey it to her upon demand at any time thereafter.  Upon receiving the deeds the defendant went into possession of the

property and proceeded to redeem it from the out-standing tax titles, and to take such care as he was able of the mortgage indebtedness thereon. He placed his mother, the complainant, in a house next to the one occupied by himself, and for two or three years maintained her there. During this period she seems to have collected, with the consent of the defendant, the rents accruing upon the property which she had deeded, and used them for her support, together with other moneys received from her son. In August, 1904, however, she became dissatisfied with the situation and filed her bill of complaint in this cause. The complainant alone gave testimony in her own behalf tending to support the charges made in her bill.

Defendant gave his version of the transaction, to the effect that he had had some differences with his mother some years prior to the giving of the deeds, and, when she asked him to undertake the redemption of the property, she told him that it would all be lost if he did not take it, and that it would all be his anyway, and if he could save anything out of it he should have it. He testified that he refused at first to undertake the burden; but, after being urged to do so by some of his friends, he ultimately consented, and accepted the deeds in question without condition, except that it was his understanding and intention to care for his mother as long as she might live, in accordance with his circumstances. Mr. William N. Cross, who drew the deeds in question, and who had been for five terms county clerk, testified substantially as did the defendant. Other testimony was introduced on behalf of the defendant tending to show that the value of the property conveyed at the time of its transfer, in the then state of the real estate market, was inconsiderable.

The circuit judge who heard the case reached the conclusion that the complainant had entirely failed to sustain the charges made in her bill. He did find, however, that the conversations between the complainant and the defendant prior to and at the time of the execution of the deeds

might properly be considered as a contract on behalf of the defendant to care for his mother during her remaining years, and he made a decree to the effect that the defendant should thereafter furnish his mother house rent and $35 per month during the remainder of her life, making the same a charge upon the entire estate. A careful examination of the record leads us to the conclusion that the circuit judge was correct in his holding.

After the case reached this court upon appeal the complainant died. It was stated upon the argument that she had made disposition of the property in question by will to others than the defendant, and that the appeal was being prosecuted on behalf of her estate. It is urged on the part of the complainant's estate that, if the decree of the circuit judge is not set aside, it should at any rate be modified so that the $35 per month provided therein should take effect from the date of the conveyances, instead of from the date of the decree. With respect to this it is sufficient to say that the record discloses that the defendant claims to have paid his mother during those years sums in excess of the amount provided for by the decree. It is true the complainant disputed this fact; but as much of the money she used was during this period collected by herself as rents from the estate, or as payments upon land contracts, and as she was a very old lady, we are of the opinion that the son, who kept books of the entire transaction, is more likely to be correct. We think the record discloses the fact that the defendant took care of his mother during the last years of her life in a manner fairly consistent with his social position.

The decree of the court below is affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, and MC-ALVAY, JJ., concurred.