**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTINA HERRERA,

     Plaintiff - Appellant,

v.

LAS CRUCES PUBLIC SCHOOLS;
BELINDA LOPEZ; CRISTINA
SALAZAR,

     Defendants - Appellees.

No. 16-2179
(D.C. No. 2:16-CV-00034-WJ-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

     Christina Herrera appeals the district court's dismissal of her action as untimely filed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the dismissal but remand with directions for the district court to enter its dismissal without prejudice.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Herrera filed an action in New Mexico state court against her former employer, Las Cruces Public Schools, and two former co-workers. She asserted three claims: (1) "Disability Discrimination and Retaliation"; (2) "Retaliatory Discharge"; and (3) "Intentional Infliction of Emotional Distress, and Prima Facie Tort." Aplt. App. at 16, 23, 24 (capitalization omitted). In her first claim, she alleged that her "action [was] for damages under The New Mexico Human Rights Act [(NMHRA)]," *id.* at 16, and that she had received an order of nondetermination from the Human Rights Bureau (HRB) of New Mexico's Department of Workforce Solutions on a charge of disability discrimination and retaliation she had filed.[1] She also alleged that Las Cruces Public Schools had "discriminated and retaliated against [her] . . . for requesting Family Medical leave," *id.* at 18, and later referenced the common acronym for the federal Family Medical Leave Act, "FMLA," *id.* at 22.

Defendants removed the case to the United States District Court for the District of New Mexico, asserting federal-question jurisdiction under 28 U.S.C. § 1331 based on the presence of an FMLA claim, and diversity jurisdiction under 28 U.S.C. § 1332 based on allegations that Ms. Herrera was an Arizona resident, all

---

[1] New Mexico statutes, New Mexico court rules, and various judicial decisions refer to the "HRB," the "Human Rights Commission," the "commission," the "NMHRC," the "HRC," the "Human Rights Division," the "Division," the "NMHRD," and the "HRD." We view these as interchangeable synonyms for purposes of legal analysis but retain their use throughout our disposition when quoting from or discussing a source that uses them. We refer only to the "HRB" when discussing the facts of Ms. Herrera's case.

defendants were New Mexico residents, and the amount in controversy exceeded the statutory minimum of $75,000. Defendants also filed a motion to dismiss the first and second claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argued that Ms. Herrera filed those two claims beyond the ninety-day limitations period provided for in N.M. Stat. Ann. § 28-1-13(A) and Rule 1-076(D) of the New Mexico Rules Annotated (NMRA). The statute provides that "[a] person aggrieved by an order of the [human rights] commission may obtain a trial de novo by filing a notice of appeal in the district court of the county where the discriminatory practice occurred or where the respondent does business." N.M. Stat. Ann. § 28-1-13(A). "The notice of appeal must be filled within ninety days from the *date of service* of the commission's order." *Id.* (emphasis added).

Materially identical provisions exist in the NMRA. Rule 1-076(B) states: "An appeal from the Human Rights Commission may be taken by filing a notice of appeal in the form of a complaint in the district court in the manner provided by these rules for the filing of a civil action in the district court." Rule 1-076(B) NMRA. As relevant here, Rule 1-076(D) provides that "[a]n appeal from the Human Rights Commission shall be taken within ninety (90) days from the *date of service* on the parties to the administrative proceeding of: (1) the commission's order." Rule 1-076(D)(1) NMRA (emphasis added). Neither the statute nor the rule defines the key phrase "date of service." However, Rule 1-005(B) provides that when

3

service is required or permitted to be made by mailing, "[s]ervice . . . is complete upon mailing." Rule 1-005(B) NMRA.

The nondetermination order Ms. Herrera appealed from was dated September 2, 2015. In her complaint, she alleged that the order was mailed on September 2, 2015, and that she received it on or about September 6, 2015. She filed her complaint on Monday, December 7, 2015, which was ninety-six days after the date it was mailed. Based on those dates and their view that "date of service" meant "date of mailing," defendants argued that her complaint was untimely and the two NMHRA claims should be dismissed.

Ms. Herrera responded that the order was mailed to her attorney on Friday, September 4, and probably received on Tuesday, September 8, given that September 6 was a Sunday and the following day, September 7, was a federal holiday (Labor Day) with no mail delivery. In support, she submitted the envelope in which the order was mailed to her attorney bearing a postage-machine stamp dated September 4, 2015. She concluded that if measured from either September 6, 7, or 8—all of which she claimed were possible dates of receipt—her December 7 filing of the complaint was timely under Rule 1-006 NMRA, which adds three days to the end of a time period when service is made by mail and further extends the time period

when the third day falls on a Saturday, Sunday, or legal holiday to "the next day that is not a Saturday, Sunday, or legal holiday." Rule 1-006(C).[2]

In resolving the dispute, the district court relied on *Vigil v. City of Espanola*, No. CIV 08-0980 JB/RLP, 2009 WL 1300746, at *10–11 (D.N.M. Feb. 18, 2009) (unpublished), which held that "service" in Rule 1-076(D) means "date of mailing" within "the sense conveyed in rule 1-005," under which "service by mail is complete on the date of mailing," Rule 1-005(B) NMRA. The district court determined that in Ms. Herrera's case, the date of service was either September 2 (the date on the order and, presumably, the mailing date), September 3, or September 4 (the date stamped on the envelope Ms. Herrera submitted), and when measured from those dates, the complaint was due on December 1, 2, or 3. Aplt. App. at 40–41 & n.1. Hence, Ms. Herrera's December 7 complaint was untimely. The court also observed that Rule 1-006's time-computation rules do not apply when they are "expressly supersede[d]" by "another Supreme Court rule of procedure," Rule 1-006(A) NMRA, and that Rule 1-076(D) expressly superseded Rule 1-006's three-day time extension for mail service by stating "[t]he three (3) day mailing period set forth in Rule 1-006 does not apply to the time limit for filing a notice of appeal," Rule 1-076(D) NMRA.

---

[2] In her response to the motion to dismiss, Ms. Herrera relied on a similar extension of the last day of a time period found in Rule 1-006(A) but which is not specifically tied to a three-day extension period. The district court's discussion reflects that reliance, but for analytical purposes, there is no material difference between the last-day portions of Rule 1-006(A) and Rule 1-006(C).

5

The court further found no equitable reason to toll the limitations period because Ms. Herrera had not demonstrated any extraordinary circumstances that prevented her from timely filing her complaint, there was no indication that the HRB failed to notify her of the nondetermination order, and she had not asked the court "to create some novel equitable basis to exempt her from [the] statute of limitations." Aplt. App. at 42. The court therefore concluded that her NMHRA "claims [were] time barred." *Id.* The court also entered a separate judgment dismissing "all claims in [the] action . . . WITH PREJUDICE, thus disposing of [the] case in its entirety." *Id.* at 44.

Ms. Herrera filed a motion for relief from judgment under Federal Rule of Civil Procedure 59(e) to which she attached two affidavits. In one, Ms. Herrera attested that she had received the nondetermination order on September 10. In the other, her attorney attested to receipt of her copy on September 8 in an envelope postmarked September 4. In denying the Rule 59(e) motion, the district court disagreed with Ms. Herrera that Rule 1-006's last-day exclusion applied, explaining that by the court's calculations, the last day of the period did not fall on a Saturday, Sunday, or legal holiday. The court also rejected her argument that it had improperly relied on September 4 as a possible start date for calculating the complaint's timeliness.

Next, the court disagreed that delay in receipt warranted tolling of the deadline. The court reiterated that the limitations period began to run on the date of mailing, not receipt, and that even if Ms. Herrera's receipt of the order was delayed

6

by eight days (from September 2 till September 10), she still had eighty-two days to timely file her complaint. This distinguished her case from those she relied on, which involved limitations periods that expired due to inevitable systemic complications or an agency error that cause the plaintiff's attorney to not receive notice of the order until the limitations period had expired. The court also concluded that she was not entitled to equitable tolling on the ground that the nondetermination order informed her that her notice of appeal had to be filed in state court "**WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS ORDER**," Aplt. App. at 15. The court noted that the order also referenced § 28-1-13(A)'s requirement that the ninety-day period ran "from the date of service of this Order of Nondetermination," Aplt. App. at 14, and reasoned that, as in *Vigil*, 2009 WL 1300746, at *13, the law was the statute, not the HRB's warning, and it was up to Ms. Herrera and her attorney to investigate further before relying on the warning. Finally, to the extent Ms. Herrera sought equitable estoppel based on the HRB's warning, the court concluded that she had not met state-law criteria for such relief, in particular the requirement to establish "affirmative misconduct on the part of the government." Aplt. App. at 60 (internal quotation marks omitted). This appeal followed.[3]

---

[3] We note that, contrary to 10th Cir. R. 10.3(C)(7), 10.3(D)(2), and 30.1(B)(1), Ms. Herrera's appendix does not include her notice of appeal, which designated only the district court's order denying her Rule 59(e) motion as the order appealed, or any of the other documents she was required to include: (1) defendants' motion to dismiss, her response to it, and defendants' supporting reply; and (2) her Rule 59 motion and defendants' response to it (she did not file a reply). We may, however, take judicial notice of the omitted filings. *See Guttman v. Khalsa*, 669 F.3d 1101,

(continued)

7

## II.  SUBJECT MATTER JURISDICTION

On appeal, Ms. Herrera first contends that the district court lacked federal question jurisdiction because she did not plead any federal claims.  Defendants respond that an FMLA claim is evident in the complaint.  We need not resolve this dispute because, on de novo review, *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1183 (10th Cir. 2014), we conclude that the district court had diversity jurisdiction under 28 U.S.C. § 1332(a).

A district court may exercise removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  The parties do not dispute, nor is there any question, whether the two requirements for diversity jurisdiction under § 1332(a) were met here—complete diversity of citizenship between the parties and adequate proof of jurisdictional facts suggesting that the amount in controversy exceeded

---

1127 n.5 (10th Cir. 2012) (stating that we can take judicial notice of filings in the district court even when they are not included in the record on appeal).  We elect to do so here despite the discretion we have to decline to consider issues for which an inadequate appendix is provided.  *See* 10th Cir. R. 10.3(B) and 30.1(B)(3); *see also Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 910 (10th Cir. 2009) (explaining that "we regularly decline to hear claims predicated upon record evidence not included in the appendix," and summarily affirming on that basis).  We do acknowledge that Ms. Herrera submitted her Rule 59(e) motion and defendants' response to it as part of her docketing statement, but she also should have included them in the appendix.  Finally, many of the appendix citations in Ms. Herrera's opening appellate brief appear erroneous, which has made this court's work more difficult and less efficient.

$75,000.[4]  But as Ms. Herrera points out, under what is commonly referred to as the forum-defendant rule, "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2).

Facially, the forum-defendant rule might serve as a bar to removal in this case: all three defendants were served.  But Ms. Herrera did not contest removal on this (or any other) basis before the district court.  And as she concedes, the forum-defendant rule is a procedural rule, not a jurisdictional one, and can therefore be waived if the plaintiff does not raise a § 1441(b)(2) objection in the district court but instead proceeds with the action.  *See Am. Oil Co. v. McMullin*, 433 F.2d 1091, 1093–95 (10th Cir. 1970) (concluding that prior, substantially similar version of § 1441(b)(2) was procedural, not jurisdictional, and therefore waivable); *see also Brazell v. Waite*,

---

[4] In their notice of removal, defendants pointed out that Ms. Herrera sought a variety of damages, including lost earnings and punitive damages, and posited that "[a]n award of past and future earnings alone would satisfy the $75,000.00 requirement" given that her annual salary was approximately $56,000 and she had last been employed with the school district more than four years ago.  Aplt. App. at 29–30.  An "estimate of the potential damages [derived] from the allegations in the complaint" is an acceptable means of "proving jurisdictional *facts* that [make] it *possible* that $75,000 [is] in play."  *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

9

525 F. App'x 878, 884 (10th Cir. 2013) (same regarding current version of § 1441(b)(2))[5].[6]

Ms. Herrera admits that she did not seek remand on this basis but asserts that it was because, by its terms, the forum-defendant rule applies only where a civil action is "removable *solely* on the basis of [diversity] jurisdiction," 28 U.S.C. § 1441(b)(2) (emphasis added). She claims she took defendants at their word when they also asserted federal-question jurisdiction, the existence of which foreclosed reliance on the forum-defendant rule. This argument is not credible. Ms. Herrera well knew whether she raised a federal claim under FMLA, and in fact she now disavows that she had. If she wanted a remand, she surely could have argued in the district court that there was no federal question jurisdiction and that, with diversity as the only remaining basis for the district court's jurisdiction, the forum-defendant could be properly invoked. She did not do so and therefore waived the protections of the forum-defendant rule.

---

[5] Consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1, we cite to our unpublished decision in *Brazell* and to other unpublished Tenth Circuit decisions only for their persuasive value.

[6] Most other circuits to consider the issue have reached the same conclusion. *See Lively v. Wild Oats Market, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) (collecting cases). Further, some courts have held that a plaintiff waives the protections of the forum-defendant rule if she fails to file a motion to remand based on any defects other than subject matter jurisdiction within 30 days of removal, as required by 28 U.S.C. § 1447(c). *See, e.g.*, *Lively*, 456 F.3d at 942; *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000). We need not consider the time limit because Ms. Herrera advanced no objections to removal in the district court, within 30 days of removal or otherwise.

## III.  MERITS

### A.    Dismissal of NMHRA claims

#### 1.  The jurisdictional nature of the limitations issue

At the outset, we must first address Ms. Herrera's argument that the district court erred in considering evidence outside of the complaint and making findings of fact on a Rule 12(b)(6) motion.  *See* Aplt. Opening Br. at 30–33.  To be sure, a statute of limitations can be raised as an affirmative defense under Rule 12(b)(6) when the time bar is clear from the face of the complaint.  *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  But the New Mexico Supreme Court has explained that "the timely filing of a notice of appeal from an NMHRA administrative order is effective to give the district court *jurisdiction* to try the case de novo under [N.M. Stat. Ann.] Section 28-1-13."  *Mitchell-Carr v. McLendon*, 980 P.2d 65, 70 (N.M. 1999) (emphasis added) (internal quotation marks omitted).  "[T]he district court must dismiss an NMHRA claim if the prerequisites of obtaining an order from the Division and appealing that order within thirty days are not satisfied."  *Id.* (considering prior version of statute with thirty-day limitations period).  Whether Ms. Herrera's complaint was timely filed, therefore, is a jurisdictional issue.  And in that circumstance, Federal Rule of Civil Procedure 12(b)(1), which allows the "defense . . . [of] lack of subject-matter jurisdiction" to be asserted "by motion," is the proper procedural mechanism, not Rule 12(b)(6).

11

This is an important distinction because, as it turned out, defendants' challenge to Ms. Herrera's compliance with the limitations period was in the nature of a factual attack rather than a facial attack. A "facial attack" is based "on the complaint's allegations as to subject matter jurisdiction [and] questions the sufficiency of the complaint," whereas a factual attack goes beyond the complaint's allegations "and challenge[s] the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).

Here, defendants sought dismissal based only on the allegations in the complaint and the nondetermination order, which was referenced in the complaint and attached to their dismissal motion. This gives the appearance of a facial attack. But the motion ultimately turned on varying factual allegations regarding the date the nondetermination order was mailed to and received by Ms. Herrera and her attorney and the legal significance of those dates. In fact, in her response to the motion, Ms. Herrera offered another document for the district court's consideration—the envelope in which a copy of the nondetermination order was mailed to her attorney— and made additional factual allegations regarding possible mailing and receipt dates that were later than the dates she alleged in her complaint (and more favorable to her). Hence, we construe defendants' motion as a factual attack on the court's subject matter jurisdiction.

When considering a factual attack on subject matter jurisdiction mounted in a motion to dismiss, "a district court may not presume the truthfulness of the complaint's factual allegations," and it "has wide discretion to allow affidavits, other

12

documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 1003. Unless the jurisdictional issue is intertwined with the merits of the case, considering evidence outside the complaint does not convert the dismissal motion into one for summary judgment under Federal Rule of Civil Procedure 56. *Id.* The jurisdictional issue here was not intertwined with the merits of the case. Accordingly, we reject Ms. Herrera's argument that the district court erred in considering documents outside of her complaint and making factual findings.

### 2. Standard of review

Our review of a Rule 12(b)(1) dismissal is de novo. *Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004).

### 3. Meaning of "date of service"

Our first task on the merits of this appeal is to determine the meaning of the term "date of service" as used in N.M. Stat. Ann. § 28-1-13(A) and Rule 1-076(D)(1) NMRA. Despite measuring the ninety-day time limit from the service date, neither the statute nor the rule defines "date of service." Plaintiff claims "date of service" means "date of receipt." Defendants claim it means "date of mailing." As noted, the district court sided with defendants, and so do we, bearing in mind that our task is not to reach our own judgment about New Mexico law but to "follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). If the state's highest court has not provided a controlling decision, we must "predict what the state supreme court would do" by "seek[ing] guidance from decisions rendered by lower courts in the relevant state, appellate

13

decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* at 666 (citations and internal quotation marks omitted). Neither party has asked us to certify any question of law to the New Mexico Supreme Court, nor are we inclined to.

Defendants contend that two New Mexico Supreme Court decisions hold "that the time for filing an appeal from an agency decision runs from the date the decision is entered or the date of service on the complainant's attorney and that service is complete upon mailing." Aplee. Response Br. at 20. We do not read those cases the same way. One of those cases, *Maples v. State*, 791 P.2d 788 (N.M. 1990), concerned the conflict between a New Mexico Supreme Court rule requiring an appeal to the judiciary from a ruling by the state Workers Compensation Hearing Officer to be filed "within thirty days from the filing of the order," *id.* at 788 (emphasis omitted), and a state statute that "allow[ed] filing thirty days after the order [was] mailed," *id.* at 789. The court held that in "procedural matters such as time limitations for appeals, a rule adopted by the Supreme Court governs over an inconsistent statute," and that the Supreme Court has "the power to set the time for all appeals from final orders, including appeals from final orders of administrative agencies." *Id.* at 790 (internal quotation marks omitted).[7] The *Maples* court did not

---

[7] We do not have such a conflict here; the statute and the rule are materially identical.

14

touch on whether the time for appeal runs from the "date of service," whether "on the complainant's attorney," as defendants suggest, Aplee. Response Br. at 20, or otherwise. Nor did *Maples* say anything about service being "complete upon mailing," *id.* It merely identified the controlling rule, which measured the time for appeal from the date an order is filed, not from the "date of service."

Defendants' contention that service is complete upon mailing to a claimant's attorney finds even less support in the other New Mexico Supreme Court case they rely on, *American Automobile Ass'n v. State Corp. Commission*, 697 P.2d 946 (N.M. 1985) (*AAA*). In *AAA*, the court held only that a state rule of appellate procedure governed the time for an appeal from a state district court decision, and that a state rule of civil procedure governing the time for appealing an action by a state administrative body to a state district court was inapplicable. *Id.* at 947–48. *AAA* did not concern "date of service," whether service is "complete upon mailing," or even an appeal from a decision by a state administrative body.[8]

For her interpretation that "date of service" equals "date of receipt," Ms. Herrera leans heavily on two decisions. The first is from the New Mexico Court

_____

[8] Defendants also point to *James v. New Mexico Human Services Department*, 742 P.2d 530, 532 (N.M. Ct. App. 1987), for its rejection of an argument that the time for appealing an agency's decision ran from the date the plaintiff received the decision because "it is virtually impossible to calculate appeal time when it runs from receipt of the decision rather than the date of the decision itself." However, the controlling court rule at issue in *James* specifically provided that the time limit for an appeal is measured from "the date of the order, decision or action appealed." *Id.* at 531 (quotation omitted). *James* is, therefore, materially distinguishable from this case.

15

of Appeals, *Downer v. New Mexico Corrections Department*, No. 30,602 (N.M. Ct. App. Dec. 29, 2010) (unpublished). In *Downer*, the district court determined that the plaintiff's notice of appeal was untimely under Rule 1-076(D) and § 28-1-13(A). *Downer*, slip op. at 2. The court of appeals issued a calendar notice proposing summary reversal. In its memorandum opinion, the court found that the administrative decision informing the plaintiff that he had "ninety days from *receipt* of the letter to appeal to the district court . . . was sufficient to preclude summary judgment on the issue of the timeliness of the appeal." *Id.* at 3.

In support of that conclusion, the appeals court cited to *Ocana v. American Furniture Co.*, 91 P.3d 58 (N.M. 2004). In *Ocana*, the New Mexico Supreme Court reversed a grant of summary judgment based on a late notice of appeal under § 28-1-13(A) and Rule 1-076(D) because the plaintiff's attorney did not receive a copy of a no-probable-cause decision until after the limitations period had run. *Id.* at 67. The Court held that "[u]nder these facts, a fact-finder could find that the Division's actions tolled the time limits." *Id.* *Ocana* explicitly declined to "discuss whether the [limitations] period begins to run on the date the complainant actually receives notice of the no-probable-cause decision from the Division." *Id.*

Neither *Downer* nor *Ocana* sheds any light on the meaning of the term "date of service." *Ocana* is explicitly a tolling case, and *Downer* is most properly viewed the same; the dispositions in both turned on the representation in the communication to the plaintiff or her attorney that receipt of the decision triggered the ninety-day period. And while *Downer* rejected the defendant's contention "that the date of

16

service is the date the decision is mailed," it did so "for the reasons stated in [the court's] calendar notice." *Downer*, slip op. at 3–4.

In the calendar notice, the court of appeals reasoned that "the appeal procedure *is not now clear*" because both the nondetermination letter and an agency regulation indicated that the ninety-day period begins to run from the date the decision is received, not when it is mailed, as could be gleaned from applying Rule 1-005(B) to "date of service" in Rule 1-076(D). *Downer*, Notice Proposed Summary Disposition, at 3–5 (undated) (emphasis added).[9] Because of the lack of clarity, and because Downer had appealed within ninety days of receiving the decision, the court of appeals proposed to reverse the district court's ruling that the appeal was untimely, citing New Mexico authority for the proposition that "only the most unusual circumstances beyond the control of the parties – such as error on the part of the court – will warrant overlooking procedural defects." *Id.* at 5 (brackets and internal quotation marks omitted). It is therefore clear that the memorandum opinion in *Downer* did not decide whether "date of service" is the date of mailing or the date of receipt but elected to reverse on equitable grounds.[10]

---

[9] We have obtained a copy of the calendar notice from the New Mexico Court of Appeals.

[10] *Downer* and all other unpublished New Mexico cases we cite in this decision are not precedential, but they "may be cited for any persuasive value." Rule 12-405(A) NMRA.

Finally, in a case decided after *Downer*, *Haynes v. Presbyterian Healthcare Services*, No. 34,489, 2015 WL 4366698 (N.M. Ct. App. June 30, 2015) (unpublished), *cert. quashed*, No. S-1-SC-35456 (N.M. Apr. 14, 2016), the New Mexico Court of Appeals suggested that Rule 1-076's phrase "date of service" means date of mailing. In *Haynes*, the appeals court had issued a calendar notice proposing to affirm the district court's dismissal of the plaintiff's NMHRA claims for failure to file a timely appeal. *Id.* at *1. In its decision, the court described its calendar notice as "noting that Appellant's complaint was filed in the district court ninety-one days after the New Mexico Human Rights Commission . . . *issued its waiver*[11] and that . . . § 28-1-13 . . . and Rule 1-076(D) . . . require the complaint be filed within ninety days." *Id.* (emphasis added). And in the calendar notice, the court stated that the waiver was "issued and mailed" on the same day. *Haynes*, No. 34,489, Notice Proposed Summary Disposition, at 2 (N.M. Ct. App. May 28, 2015).[12] Hence, by referring to the date of issue, which the calendar notice makes clear was the same as the mailing date, *Haynes* clearly stands for the proposition that service under both the statute and the rule is complete upon mailing.[13]

---

[11] The date of service of "the director's or complainant's notice of waiver of the complainant's rights to hearing before the Commission" is another event that triggers the ninety-day appeal period. Rule 1-076(D)(2) NMRA.

[12] As with *Downer*, we have obtained a copy of the calendar notice from the New Mexico Court of Appeals.

[13] *Haynes* also concluded that Rule 1-006's three-day extension of the ninety-day period when service is made by mail was inapplicable under the express

(continued)

18

The other case Ms. Herrera relies on for her view that "date of service" means "date of receipt" is *DePaula v. Easter Seals El Mirador*, No. 14-CV-252 MCA/SCY, 2015 WL 12751708 (D.N.M. Jan. 27, 2015) (unpublished). In *DePaula*, the federal district court noted that *Downer* was decided after *Vigil v. City of Espinosa*, the case the district court had relied on in Ms. Herrera's case, and found *Downer* persuasive for its *tolling* discussion, quoting from it at length and concluding that the plaintiff's appeal was timely because it was filed exactly ninety days after he received the agency's decision. *Id.* at *4. Hence *DePaula* is a tolling case. It does not assist us in determining the meaning of the term "date of service."

In addition to *Haynes*, we find *Vigil* helpful in predicting how the New Mexico Supreme Court would rule on the meaning of "date of service" in Rule 1-076(D) because it contains a considered and on-point analysis of the issue. In *Vigil*, the court reasoned that "rule 1-076 uses 'service' as that term is defined elsewhere in the [NMRA]" specifically in Rule 1-005 ("Service [by mail] is complete upon mailing"), and that "there is nothing in rule 1-076 that would command a different definition of 'service' within its context." *Vigil*, 2009 WL 1300746, at *10. The court found additional support for its view in the fact that deadlines for other types of appeals set out in the NMRA "always depend[] on the action of the agency or court," not "on receipt or any other action by the parties." *Id.* at *11. The court also relied on authority from other jurisdictions that in the service-of-process context, the burden of

terms of Rule 1-076(D). As noted, the district court in Ms. Herrera's case reached the same conclusion, which she has not challenged on appeal.

19

proving service is on the party invoking a court's jurisdiction, but a rebuttable presumption of valid service "arises upon a showing that the statutes or rules prescribing the manner of service have been followed." *Id.* at \*12. This system "provides an effective way for [a] party to prove jurisdiction" and "prevents the injustice of allowing parties to thwart a court's proper jurisdiction by making unsubstantiated allegations that they did not receive notice of an action." *Id.* The court concluded that the plaintiff had not rebutted the presumption that proper service was made on the date the nondetermination order was mailed to her. *Id.*[14]

Based largely on *Vigil* and to a somewhat lesser extent on *Haynes*, we conclude that "date of service" in both Rule 1-076(D) and § 28-1-13(A) means "date of mailing" when service is effected by mailing. Here, the district court determined that the latest mailing date was September 4, and measured from that date, the ninety-day period ended on December 3. Because Ms. Herrera did not file her complaint until December 7, it was untimely.

### 4. Ms. Herrera's counterarguments

Ms. Herrera offers a number of arguments why it is improper to follow *Vigil*'s interpretation of "date of service." She first points out that the NMRA "govern the procedure in the district courts of New Mexico in all suits of a civil nature," and

---

[14] We note that in *Montano v. Public Service Co. of New Mexico*, No. 1:14-cv-00079 WJ/SCY, 2015 WL 12861177, at \*2 (D.N.M. Aug. 3, 2015) (unpublished), the same district judge who later decided Ms. Herrera's case followed *Vigil*'s holding that "date of service" means "the date the Order [of] Non-Determination was mailed."

"[e]xcept where [the NMRA] explicitly provide otherwise, the [NMRA] do not apply where there are contrary statutory provisions concerning special statutory or summary proceedings." Rule 1-001(A) NMRA. Ms. Herrera posits that NMHRA proceedings appear to fit under Rule 1-001(A)'s "special statutory proceedings" exception, and that there is a contrary agency regulation that would override Rule 1-005(B)'s provision that service by mail is complete upon mailing. We disagree because, even assuming the truth of her premise (that NMHRA proceedings are "special statutory proceedings"), Ms. Herrera's conclusion rests on a faulty reading of Rule 1-001, which renders the NMRAs inapplicable in the face of "contrary *statutory* provisions," Rule 1-001(A) NMRA (emphasis added), not contrary *agency regulations*.

Next, Ms. Herrera contends that Rule 1-076(D) does not govern determination of "date of service" because Rule 1-076(H) provides that the NMRAs "apply to and govern the procedure in the district court for *de novo* appeals from the Human Rights Commission" only "[a]fter service of the complaint," whereas service of the agency decision that triggers the ninety-day appeal period occurs prior to service of the complaint. We reject this argument. In *Maples*, the New Mexico Supreme Court stated in no uncertain terms that it has "the power to set the time for appeals from final orders, including appeals from final orders of administrative agencies." 791 P.2d at 790. In promulgating Rule 1-076(D), the Supreme Court did just that, and it can decide when the date of service occurs for purposes of "set[ting] its own time limitations for appeals." *Maples*, 791 P.2d at 790. Part of deciding when the

21

date of service occurs is deciding whether to define "'service . . . *in the sense conveyed* in rule 1-005." *Vigil*, 2009 WL 1300746, at \*11 (emphasis added). That occurs during the pendency of a case, not before the court acquires jurisdiction, as Ms. Herrera suggests. In other words, although a state court does not acquire jurisdiction over an NMHRA matter until a complaint is filed appealing the agency decision, it is empowered to look back at service of the decision and apply its ninety-day rule in the manner it sees fit, which, we have concluded, is accomplished by determining the date the decision was mailed. Thus, we are unpersuaded that when attempting to define "date of service" as used in Rule 1-076(D), Rule 1-076(H) precludes reference to Rule 1-005(B)'s directive that "[s]ervice . . . is complete upon mailing."

Ms. Herrera also argues that the time for appeal should be based on § 9.1.1.10(C) of the New Mexico Administrative Code (NMAC), which provides that when the agency's "director determines that no probable cause exists, . . . the director will advise the complainant of his or her right to appeal the determination in district court within 30 days [the former statutory deadline] after *receipt* of the determination" (emphasis added). She observes that by regulation, the agency "may look [to the NMRA] for guidance" when there is no "specific provision governing an action in the [NMHRA] or in [the NMAC]," N.M. Code § 9.1.1.2(B), and she therefore proposes that when an NMAC provision is on point, the NMRA do not "override . . . procedures during the agency process prior to the filing of the *de novo* appeal." Aplt. Opening Br. at 27.

22

We are unconvinced.  First, as Ms. Herrera points out, the regulation's reference to a 30-day period is erroneous—either a "remnant[] of an older version of the statute or a typo."  *Id.* at 27 n.6.  But that is not why we find her argument unconvincing.  Instead, just as she concedes that the ninety-day period of § 28-1-13(A) "*trumps the [erroneous] regulation[],*" *id.* (emphasis added), so too, under the plain terms of N.M. Code § 9.1.1.2(B), does § 28-1-13(A)'s "date of service" trigger trump the regulation's reference to "receipt" as the event that starts the ninety-day appeal period.  *A fortiori*, the regulation is also trumped by the use of "date of service" in Rule 1-076(D) because, as reasoned in *Maples*, 791 P.2d at 790, the New Mexico Supreme Court, not the state legislature, has the power to fix the time for "appeals from final orders of administrative agencies," and therefore a court rule "controls over conflicting law."  Accordingly, *Maples* leads us to the NMRA, not the NMAC, in determining when the "date of service" occurs, which is a determination to be made by the judiciary, whether through an NMRA or case law interpreting the NMRA.

Relatedly, Ms. Herrera notes that the regulation requires the director to notify a complainant of the right to appeal "by certified mail, return receipt requested." N.M. Code § 9.1.1.10(C).  Because that procedure was not followed in her case, she contends that "any uncertainties about the date of service should be resolved in [her] favor."  Aplt. Opening Br. at 30.  But Ms. Herrera argued to the district court that a copy of the nondetermination letter was mailed to her attorney on September 4, and on appeal she contends that it is the date of service on her attorney that counts.

23

Hence, there is no uncertainty about the latest possible date the copy was mailed to her attorney, and as the district court properly concluded, even when measured from that date (September 4), the complaint was untimely.[15]

Finally, Ms. Herrera would have us note that Rule 1-005(B) is not the only NMRA defining service by mail—she claims that Rule 1-004 defines service of process by mail "as occurring upon receipt – when the summons and complaint are served, even if service is by mail." *Id.* at 28. We construe this argument as founded on Rule 1-004(E)(3), as we can locate no other relevant subparagraph of the rule. However, subparagraph (E)(3) does not say that service by mail is complete upon receipt but that it is "complete on the date the receipt [for the envelope or package containing the summons and complaint, writ, or other process] is signed as provided by this subparagraph." Rule 1-004(E)(3) NMRA. Nothing in Rule 1-076, which specifically applies to "appeals from the Human Rights Commission," suggests that a nondetermination order must be served in this manner for purposes of determining the "date of service." Nor do we see any compelling reason why the additional precautions used in serving process on a *defendant* in a civil case, which is "the means by which jurisdiction is obtained over a person to compel the person to appear in a judicial proceeding," Rule 1-001(B)(3) NMRA, should apply to the service of a

---

[15] Ms. Herrera now complains that the date on the envelope used to mail her attorney's copy is not a postmark but a postage-meter stamp and therefore not proof of mailing on September 2. Given the district court's conclusion that the complaint was untimely even when measuring the limitations period from September 4, we fail to see the point in this argument.

24

nondetermination order to a potential *plaintiff/appellant*, which does not establish jurisdiction at all. We therefore reject this argument.

### 5. Equitable tolling and equitable estoppel

The district court rejected Ms. Herrera's arguments for equitable tolling and equitable estoppel. Ms. Herrera has not argued that the district court erred in doing so. Accordingly, she has waived appellate review of the issue. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived).

### 6. Conclusion on NMHRA claims

A dismissal for lack of subject matter jurisdiction generally is without prejudice under both federal law and New Mexico law. *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017); *Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999). Consequently, although we affirm the district court's dismissal of the first and second claims, which arose under the NMHRA, based on the untimeliness of the complaint, we must remand for the court to enter its dismissal without prejudice.

### B. Dismissal of third claim

Ms. Herrera argues that the district court erred in dismissing her third claim because that claim was not subject to the NMHRA's ninety-day statute of limitations. Defendants argue that she failed to preserve this issue because she raises it for the first time on appeal even though she recognized in her Rule 59(e) motion that the court had dismissed the case in its entirety.

We agree that Ms. Herrera has waived appellate review of the dismissal of her third claim. Where, as here, "a post-judgment motion serves as the only means of bringing an issue to the district court's attention, a party may not forgo that procedure and raise the issue for the first time on appeal." *See Acheff v. United States*, 595 F. App'x 741, 743 (10th Cir. 2014). Further, absent an argument for plain-error review, we do not consider theories or contentions for reversal raised for the first time on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Ms. Herrera has not argued for plain-error review. Accordingly, she has waived the district court's dismissal of her third claim.

## IV. CONCLUSION

The district court's judgment is affirmed but we remand with instructions that the court enter the dismissal of claims one and two without prejudice.

Entered for the Court

Mary Beck Briscoe
Circuit Judge